## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAQUANNA WATKINS, *individually and guardian ad litem for J.W., a minor*, | Civil Action No: 17-284 (SDW) (LDW) |
| Plaintiff, | |
| v. | **OPINION** |
| CITY OF NEWARK POLICE DEPARTMENT, et al., | March 12, 2018 |
| Defendants. | |

**WIGENTON,** District Judge.

Before this Court is Defendant Essex County Prosecutor's Office's ("ECPO" or "Defendant") Motion to Dismiss Plaintiff Shaquanna Watkins' ("Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the ECPO's Motion to Dismiss is **GRANTED**.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that on February 2, 2016, undercover officers in the "gang unit" of the ECPO and/or Newark Police Department were patrolling an intersection in Newark, New Jersey, when they stopped J.W., an African-American teenager, who was walking home from the grocery store. (Am. Compl. ¶¶ 1-2, 21, 32, 36, ECF No. 24.) Defendant Police Officer Wilberto Ruiz

1

("Ruiz") and/or other officers drove up to J.W. in an "unmarked black SUV, shined a flashlight in his face and demanded that he stop walking." (*Id.* ¶ 23.) J.W. attempted to run away, but was blocked in by two other unmarked, black SUVs. (*Id.* ¶ 24.) Once the officers identified themselves as law enforcement, J.W. "immediately stopped running . . . and put his hands in the air[.]" (*Id.* ¶ 25.) Plaintiff alleges that Ruiz and/or other officers then physically attacked J.W., "pull[ing] his left arm with such force behind his back that it caused his left shoulder to break in half and dislocate[.]" (*Id.* ¶ 26.) It is further alleged that the officers handcuffed J.W., and then "physically beat him, sexually fondled his genitals and his rear end, cursed at him and accused him of wrongdoing for at least seven minutes." (*Id.* ¶¶ 27-29.) Thereafter, the officers left J.W. on the street without addressing his request for medical assistance. (*Id.* ¶ 30.)

On November 28, 2016, Plaintiff[1] filed suit against Defendants Ruiz, the ECPO, City of Newark Police Department, City of Newark, County of Essex,[2] and several fictitious defendants in the Superior Court of New Jersey, Law Division, Essex County. (Compl., ECF No. 1-1.) County of Essex removed the action to this Court on January 13, 2017. (Notice of Removal, ECF No. 1.) On April 14, 2017 and May 15, 2017, the ECPO and City of Newark filed their respective Motions to Dismiss. (ECF Nos. 9, 14.) On August 17, 2017, after oral argument, this Court granted both motions; and Plaintiff was given thirty days to file an Amended Complaint. (Order, ECF No. 20.) Plaintiff filed an Amended Complaint on September 18, 2017, asserting the following thirteen causes of action: excessive force (Count One); racial discrimination (Count Two); denial of medical care (Count Three); false imprisonment (Count Four); assault and battery (Count Five); sexual assault (Count Six); a *Monell* claim (Count Seven); negligent hiring,

---

[1] Shaquanna Watkins brings this suit individually and as guardian *ad litem* for J.W., her minor son.
[2] Defendant County of Essex was dismissed from this action on January 10, 2018 pursuant to a so-ordered stipulation. (ECF No. 39.)

supervision, retention and training (Count Eight); intentional infliction of emotional distress (Count Nine); negligent infliction of emotional distress (Count Ten); negligence (Count Eleven); parental per quod claim for medical expenses and loss of services/earnings/companionship/ contributions (Count Twelve); and alternative liability (Count Thirteen).[3]  (*See generally* Am. Compl.)  On January 16, 2018, the ECPO filed a Motion to Dismiss the Amended Complaint.  (ECF No. 41.)  Plaintiff filed her opposition on February 6, 2018, and the ECPO replied on February 13, 2018.  (ECF Nos. 42, 43.)

## II.  LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips*, 515 F.3d at 231 (external citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

---

[3] The Amended Complaint also added Lieutenant Adolph Vazquez as a defendant.  (Am. Compl.)  Additionally, the fictitious defendants were changed to "Police Officer John Doe 1-10," "Lieutenant Rob Roe 1-10," "Bob Boe 1-10," and "ABC Corp 1-5."  (*Id.*)

do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*

## III. DISCUSSION

It is undisputed that among Plaintiff's thirteen causes of action, only Counts Seven and Eight contain allegations against the ECPO.  (*See generally* Am. Compl.)  Therefore, this Court will only address those two counts in deciding the instant motion.

### a. Sovereign Immunity

The Eleventh Amendment "has been interpreted to make states generally immune from suit by private parties in federal court." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001).  This immunity extends to entities that are deemed "arms of the state." *Karns v. Shanahan*, 879 F.3d 504, 512-13 (3d Cir. 2018) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007)).

To determine whether an entity is an "arm of the state," courts examine the following three factors outlined in *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989): "(1) whether the money that would pay the judgment would come from the state treasury; (2) the status of the entity under state law; and (3) the degree of autonomy of the entity." *Denkins v. State Operated Sch. Dist. of Camden*, No. 16-4223, 2017 WL 5186335, at *5 (3d Cir. Nov. 9, 2017) (citing *Fitchik*, 873 F.2d at 659).  The factors are then balanced to ascertain whether the entity is

an arm of the state. *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 84 (3d Cir. 2016). Although this circuit "formerly assigned primacy to the funding factor, we have recalibrated those factors at the direction of the Supreme Court, and now weight them co-equally." *Denkins*, 2017 WL 5186335, at *2 (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005)).

In considering the first *Fitchik* factor, the "'crux of the state-treasury criterion' is not whether the state will be the principal source of any funding, but rather whether the state is 'legally responsible for the payment of [the] judgment.'" *Karns*, 879 F.3d at 515 (quoting *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 233 (3d Cir. 2006)). "Under New Jersey law, when county prosecutors and their subordinates perform law enforcement and prosecutorial functions, 'they act as agents of the State,' and the State must indemnify a judgment arising from their conduct." *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) (quoting *Wright v. State*, 778 A.2d 443, 461-62, 464 (N.J. 2001)). In contrast, counties are liable for a county prosecutor's administrative tasks unrelated to their strictly prosecutorial functions, such as personnel decisions. *Id.* (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir. 1996)).

Here, Counts Seven and Eight concern acts or omissions allegedly stemming from the ECPO's policies, practices, and customs, which are typically considered prosecutorial functions. *See Hyatt*, 340 F. App'x at 836-37 (citing *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009)). For example, Plaintiff alleges that J.W.'s constitutional rights were violated by virtue of Defendants' failure to: properly hire, retain, and train its officers; monitor and discipline its officers; and adequately and properly investigate citizen complaints of police misconduct. (Am. Compl. ¶ 133.) "Training and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks concerning personnel." *Hyatt*, 340 F. App'x at 836-37; *see also Adams v. Atl. City*, No. 13-7133, 2014 WL 2094090, at *5 (D.N.J. May

20, 2014) (finding that the county was "not responsible for, or capable of enacting, policies relating to law enforcement activities" at the county prosecutor's office). Thus, the state would have to indemnify the ECPO if there was a judgment in this case.[4] For the foregoing reasons, the first *Fitchik* factor weighs in favor of finding that the ECPO is an arm of the state.

The second *Fitchik* factor, i.e., the status of the entity under state law, requires courts to determine "whether state law treats an agency as independent, or as a surrogate for the state." *Fitchik*, 873 F.2d at 662. Under the New Jersey Constitution, county prosecutors are "appointed by the Governor with the advice and consent of the [State] Senate." N.J. Const. art. VII, § 2, ¶ 1. By statute, "[t]he criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors." N.J. Stat. Ann. § 2A:158-4. Furthermore, as discussed above, the ECPO acts as an agent of the state when performing its law enforcement and investigative functions. *See Hyatt*, 340 F. App'x at 836-37; *see also Wright,* 778 A.2d at 461-62, 464 (N.J. 2001). Thus, the second *Fitchik* factor also weighs in favor of finding the ECPO is an arm of the state.

The third *Fitchik* factor, i.e., the degree of autonomy of the entity, focuses on the "entity's governing structure and the oversight and control exerted by a State's governor and legislature." *Denkins*, 2017 WL 5186335, at *3 (quoting *Maliandi*, 845 F.3d at 96). By statute, the Attorney General is authorized to supervise county prosecutors and "supersede a county prosecutor in any investigation, criminal action or proceeding . . . ." N.J. Stat. Ann. §§ 52:17B-103, 106-07. "[T]he county prosecutor's law enforcement function is unsupervised by county government . . . , but remains at all times subject to the supervision and supersession power of the Attorney General." *Wright*, 778 A.2d at 452. As such, when performing its prosecutorial functions, the ECPO is not

---

[4] Indeed, Defendant asserts in its moving papers that the New Jersey Attorney General has agreed to defend and indemnify the ECPO in this case. (Def.'s Br. in Supp. of Mot. to Dismiss at 7, ECF No. 41-2.)

autonomous from the state; and the third *Fitchik* factor weighs in favor of finding the ECPO is an arm of the state.

On balance, the *Fitchik* factors weigh in favor of finding that the ECPO is an arm of the state in the instant matter. Because Plaintiff does not submit that the state's immunity has been waived or abrogated, the ECPO is entitled to sovereign immunity.[5] Therefore, Plaintiff's claims against the ECPO are barred under the Eleventh Amendment.[6]

### b. "Persons" Under 42 U.S.C. § 1983 & the New Jersey Civil Rights Act ("NJCRA")

Although it has already been determined that the ECPO is immune from liability, this Court will briefly address Defendant's alternative argument that Plaintiff's § 1983 claim (Count Seven)[7] and NJCRA claim (Count Eight)[8] should be dismissed because the ECPO is not a "person" amenable to suit under the federal or state statutes.

Section 1983 and the NJCRA both create private causes of action against a "person" who acts under color of law. 42 U.S.C. § 1983; N.J. Stat. Ann. § 10:6-2. "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" potentially liable under § 1983 or the NJCRA. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 70-71 (1989); *see also Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 856 (3d Cir. 2014) ("New Jersey district courts have interpreted the NJCRA as having incorporated the Supreme Court's decision in *Will* . . . ."). As discussed above, the ECPO is an

---

[5] "There are three 'narrowly circumscribed exceptions to Eleventh Amendment immunity: (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law.'" *Outen v. Office of the Bergen Cty. Prosecutor*, No. 12-123, 2013 WL 5674380, at *3, n.2 (D.N.J. Oct. 16, 2013) (quoting *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of Newark*, 344 F.3d 335, 344-45 (3d Cir. 2003). None of the exceptions apply to the ECPO.
[6] Although Plaintiff's opposition brief focuses on the adequacy of its pleadings, sovereign immunity is a jurisdictional bar that may be raised in a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Denkins*, 2017 WL 5186335, at *1, 4.
[7] This Court's analysis of whether the ECPO is a "person" under § 1983 does not apply to Plaintiff's claim under 42 U.S.C. § 1981, which is also included in Count Seven.
[8] This Court interprets Count Eight, which refers to state-law claims alleging "negligent hiring, training, supervision and/or retention" as NJCRA claims. (*See* Am. Compl. ¶¶ 137-41).

arm of the state. Therefore, it is not a "person" subject to suit under either statute. *See Karns,* 879 F.3d at 519 n.6 ("Where, as here, the entity claiming immunity is determined to be an arm of the state, . . . it is beyond dispute that it is not a 'person' for § 1983 purposes."); *Hof v. Janci*, No. 17-295, 2017 WL 3923296, at *5 (D.N.J. Sept. 7, 2017) (dismissing plaintiff's § 1983 and NJCRA claims because defendants were "acting as arms of the state").

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**, solely as to the ECPO. An appropriate Order follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:    Clerk
cc:      Leda Dunn Wettre, U.S.M.J.
           Parties